IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MT. HAWLEY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-0787 |
| | § | |
| HUSER CONSTRUCTION COMPANY, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley" or "Plaintiff") sued defendant Huser Construction Company, Inc. ("Huser" or "Defendant") seeking a declaration that Mt. Hawley did not owe Huser a duty to defend in a lawsuit brought against Huser.[1] Huser answered and pled counterclaims for breach of contract and violations of the Texas Insurance Code against Mt. Hawley.[2] Pending before the court are Plaintiff Mt. Hawley Insurance Company's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment and Brief in Support ("Mt. Hawley's Motion") (Docket Entry No. 8) and Defendant's

---

[1]See Complaint for Declaratory Relief ("Mt. Hawley's Complaint"), Docket Entry No. 1, p. 7 ¶ 24.

[2]See Huser's Answer and Counterclaims to Mt. Hawley's Complaint for Declaratory Relief ("Huser's Answer"), Docket Entry No. 6.

Response to Mt. Hawley's Motion for Summary Judgment and Cross Motion on the Duty to Defend (Docket Entry No. 9) ("Huser's Response and Cross Motion"). For the reasons stated below, Mt. Hawley's Motion will be granted and Huser's Cross Motion will be denied.

## I. <u>Case Background</u>

### A. **Insurance Policy**

Huser purchased Commercial General Liability ("CGL") Insurance Policies (the "Mt. Hawley Policies") and Commercial Excess Liability Insurance Policies from Mt. Hawley to cover the period from December 31, 2014, through January 1, 2019.[3] The Mt. Hawley Policies contained a $1,000,000 limit of liability for each occurrence, and a $2,000,000 general aggregate limit and a $2,000,000 products-completed operations aggregate limit.[4] The terms of each of the Mt. Hawley Policies are the same or substantially similar.[5] The Mt. Hawley Policies imposed upon Mt. Hawley a duty to defend against certain claims brought against Huser.[6]

---

[3] <u>See</u> Mt. Hawley's Complaint, Docket Entry No. 1, p. 4.

[4] <u>See</u> Mt. Hawley Policies, Exhibits 2-5 to Mt. Hawley's Complaint, Docket Entry Nos. 1-2 to 1-5.

[5] <u>See</u> Mt. Hawley's Complaint, Docket Entry No. 1, p. 5.

[6] <u>See, e.g.</u>, Commercial General Liability Policy No. MGL0174186, Exhibit 2 to Mt. Hawley's Complaint, Docket Entry No. 1-2, p. 4.

1.  <u>Duty to Defend</u>

The Mt. Hawley Policies contain a duty to defend provision, which states:

**SECTION 1-COVERAGES**

**COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > **(1)** the amount we will pay for damages is limited as described in **Section III — Limits of Insurance**; and
> >
> > **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.[7]

The Mt. Hawley Policies define "property damage" as:

> a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be

---

[7]<u>See, e.g.</u>, <u>id.</u>

-3-

deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[8]

The Mt. Hawley Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[9]   The Mt. Hawley Policies define "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."[10]

2.   Relevant Exclusions

In support of its Motion, Mt. Hawley argues that it does not have a duty to defend Huser because the Breach of Contract Exclusion contained as an endorsement on each of the Mt. Hawley Policies excludes coverage:

**BREACH OF CONTRACT EXCLUSION**

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:

**a.**   Breach of express or implied contract;

**b.**   Breach of express or implied warranty;

---

[8]See, e.g., id. at 19 ¶ 17.

[9]See, e.g., id. at 18 ¶ 13.

[10]See, e.g., id. at 19 ¶ 18.

-4-

**c.** Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

**d.** Libel, slander or defamation arising out of or within the contractual relationship.[11]

Huser argues that the separate "Your Work" Exclusion and the subcontractor exception contained within it preserve coverage for property damage caused by subcontractors:

**1. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" [is excluded from coverage].

<u>This exclusion does not apply</u> if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.[12]

Pertinent to this exclusion, "[y]our work" is defined as both "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."[13]

**B. The <u>EHP v. Huser</u> Lawsuit (the "Underlying Action")**

Huser agreed to act as a general contractor for Eagle Heights Pleasanton, LLC ("EHP") to construct an apartment complex in Pleasanton, Texas (the "EHP Project").[14]  The Underlying Action is

---

[11]<u>See, e.g.</u>, <u>id.</u> at 52.

[12]<u>See, e.g.</u>, <u>id.</u> at 8 (emphasis added).

[13]<u>See, e.g.</u>, <u>id.</u> at 20 ¶ 22.

[14]<u>See</u> Huser's Response and Cross Motion, Docket Entry No. 9, p. 8.

a dispute between EHP and Huser over alleged construction defects in the EHP Project. Huser's contract with EHP provided that:

**ARTICLE 3 RELATIONSHIP OF THE PARTIES**

The Contractor [Huser] accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner [EHP] to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

* * *

**ARTICLE 7    COSTS TO BE REIMBURSED**

**§ 7.3   SUBCONTRACT COSTS**

* * *

**§ 7.3.3** Owner's approval of subcontracts shall not create any liability for the Owner or Contractor in any way and shall not be unreasonably withheld.

* * *

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

* * *

**ARTICLE 10   SUBCONTRACTS AND OTHER AGREEMENTS**

**§ 10.1**  Those portions of the Work that the Contractor does not customarily perform with the Contractor's own

personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. . . .[15]

In connection with the EHP Project, Huser hired several subcontractors. One of those subcontractors was Schaffer, which was responsible for designing and installing the HVAC system.[16]

EHP alleges that after Huser completed work on the EHP Project in 2016 and EHP took possession, EHP discovered multiple deficiencies in the workmanship and materials used in the Project. EHP claims that work performed by Schaffer was deficient in multiple respects, including: (1) breaching a fire wall; (2) using the wrong type of ducts; (3) misplacing air vents; (4) leaving trash in the air ducts; (5) improperly installing electrical connections to the HVAC; and (6) using poorer quality units than those specified by the job architect.[17]

EHP filed the Underlying Action against Huser and Schaffer on February 13, 2018, in the 80th Civil District Court of Harris County, Texas, under Cause No. 2018-09694.[18] The Underlying Action alleged the following causes of action against Huser:

---

[15]See Standard Form of Agreement Between Owner and Contractor — EHP and Huser ("EHP Contract") [Attached to Plaintiff's Original Petition and Jury Demand ("EHP's Petition") in the Underlying Action], Exhibit 1 to Mt. Hawley's Complaint, Docket Entry No. 1-1, pp. 10-16.

[16]See Huser's Response and Cross Motion, Docket Entry No. 9, p. 8.

[17]See EHP's Petition, Exhibit 1 to Mt. Hawley's Complaint, Docket Entry No. 1-1, pp. 5-6.

[18]See id. at 1.

## HUSER'S BREACH OF CONTRACT AND NEGLIGENCE

11.  HUSER contracted to build the project in a good and workmanlike manner using materials and design information set forth by the job architect (see Exhibit "1"). HUSER, in many respects, failed to do so. HUSER also agreed to staff the job with subcontractors who were knowledgeable in their respective trades and agreed to supervise the work that was being done by those contractors to make certain that their work was being done in accordance with plans and specifications and in a good and workmanlike manner. The property has been plagued with electrical problems, roofing problems, plumbing problems, foundation problems, and HVAC problems and deficiencies. Materials that were specified were not used. Insulation is missing. Drier vents were improperly installed. Water fountains are improperly attached to the walls and, in fact, one has fallen off the wall because it was not properly affixed. The ridge vents on the roof were installed improperly. Plumbing was installed improperly using inferior materials that were not specified in the plans. Bathrooms were improperly vented into the attic and at least one instance a toilet was plumbed with hot, not cold water. These items are just a sampling of the incidents which show the manner in which HUSER has breached its contract or, in the alternative, has negligently supervised and staffed the project in question all proximately causing damages or producing damages which have far exceeded the minimum jurisdictional limits of this Court.[19]

EHP's Petition in the Underlying Action also alleged separate causes of action against Schaffer.[20] After Huser was served by EHP, Huser timely placed Mt. Hawley on notice of the claim.[21]

### C.  **This Action**

Mt. Hawley refused to defend Huser in the Underlying Action. Mt. Hawley filed this action on March 13, 2018, seeking a

---

[19]See id. at 4-5.

[20]See id. at 5-6.

[21]See Huser's Response and Cross Motion, Docket Entry No. 9, p. 9.

declaration that it had no duty to defend Huser in the Underlying Action.[22]  Mt. Hawley filed its pending Motion on June 8, 2018.[23] Huser filed its Response and Cross Motion on June 29, 2018.[24]  Both parties have filed responses and replies to each pending motion.[25] The pending motions address Mt. Hawley's duty to defend and duty to indemnify Huser, as well as Huser's counterclaims against Mt. Hawley.

## II.  Standard of Review

### A.  Motion for Judgment on the Pleadings

A motion brought pursuant to Federal Rule of Civil Procedure 12(c) should be granted if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law.  Greenberg v. General Mills Fun Group, Inc., 478 F.2d 254, 256 (5th Cir. 1973).  A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim.  See In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209 (5th Cir. 2010); Guidry v. American

---

[22]See Mt. Hawley's Complaint, Docket Entry No. 1.

[23]See Mt. Hawley's Motion, Docket Entry No. 8.

[24]See Huser's Response and Cross Motion, Docket Entry No. 9.

[25]See Huser's Response and Cross Motion, Docket Entry No. 9; Plaintiff Mt. Hawley Insurance Company's Response to Cross Motion on the Duty to Defend, Docket Entry No. 11; Plaintiff Mt. Hawley Insurance Company's Reply in Support of Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment, Docket Entry No. 13; Huser's Reply in Support of its Cross Motion for Summary Judgment on the Duty to Defend, Docket Entry No. 15.

<u>Public Life Insurance Co.</u>, 512 F.3d 177, 180 (5th Cir. 2007). Thus, "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotations omitted).

**B. Motion for Summary Judgment**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about any material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Cross-motions for summary judgment are evaluated separately. <u>See Shaw Constructors v. ICF Kaiser Engineers, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004). Each movant must establish that no genuine issue of material fact exists and that it is entitled to judgment

as a matter of law, and the court views the evidence in favor of each nonmovant. See id.; Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009) (citing Ford Motor Co. v. Texas Department of Transportation, 264 F.3d 493, 499 (5th Cir. 2001)).

## III. Analysis

### A. Insurance Law

Under Texas law the insured generally bears the initial burden of establishing that coverage is potentially provided by the applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage. See SWE Homes, LP v. Wellington Insurance Co., 436 S.W.3d 86, 90 (Tex. App. -- Houston [14th Dist.] 2014, no pet.). If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies. Guaranty National Insurance Co. v. Vic Manufacturing Co., 143 F.3d 192, 193 (5th Cir. 1998).

#### 1. Contract Interpretation

Insurance policies are subject to the rules of contract interpretation. State Farm Lloyds v. Page, 315 S.W.3d 525, 527 (Tex. 2010). In construing the terms of a written contract, the court's primary goal is always "to determine the contracting parties' intent through the policy's written language." Id. The court reads all parts of the contract as a whole and gives effect to each word, clause, and sentence so that no provision of the

agreement is rendered inoperative. Id. Courts construe terms in contracts to have their plain, ordinary meaning unless something in the contract itself indicates that the parties intended for them to have particular definitions. Tanner v. Nationwide Mutual Fire Insurance Co., 289 S.W.3d 828, 831 (Tex. 2009).

When a contract as worded can be given "a definite or certain legal meaning," it is unambiguous as a matter of law, and the court enforces it as written. WBCMT 2007 C33 Office 9720, L.L.C. v. NNN Realty Advisors, Inc., 844 F.3d 473, 478 (5th Cir. 2016) (applying Texas law). The court will not find an insurance contract ambiguous because it lacks clarity or because the parties disagree on its meaning. Id.; Page, 315 S.W.3d at 527. "Instead, a contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction." WBCMT 2007 C33 Office 9720, L.L.C., 844 F.3d at 478 (quoting McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C., 736 F.3d 375, 378 (5th Cir. 2013)) (internal quotations omitted).

2. Duty to Defend

In Texas an insurer's duty to defend and its duty to indemnify are separate and distinct duties. McGinnes Industrial Maintenance Corp. v. Phoenix Insurance Co., 477 S.W.3d 786, 803 (Tex. 2015). In determining whether an insurer has a duty to defend, courts follow the eight-corners rule. Ewing Construction Co. v. Amerisure

-12-

Insurance Co., 420 S.W.3d 30, 33 (Tex. 2014). "Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." Id. The court examines the factual allegations that give rise to the damages claims, not the legal conclusions or theories asserted. Id. Doubts about the duty to defend are resolved in favor of the insured. Id. "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination . . . ." Liberty Mutual Insurance Co. v. Graham, 473 F.3d 596, 600 (5th Cir. 2006) (applying Texas law).

### 3. Duty to Indemnify

The duty to indemnify is triggered by the actual facts establishing the insured's liability in the underlying litigation, which may differ from the alleged facts. Hartford Casualty Insurance Co. v. DP Engineering, L.L.C., 827 F.3d 423, 430 (5th Cir. 2016) (applying Texas law). Therefore, with one recognized exception, the duty to indemnify must be decided after a judgment has been entered in the underlying suit. Id. (citing Farmers Texas County Mutual Insurance Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997)). The recognized exception applies when "the same reasons that negate the duty to defend likewise negate any possibility

-13-

[that] the insurer will ever have a duty to indemnify." Id. (quoting Griffin, 955 S.W.2d at 84) (internal quotations omitted).

## B. Discussion

Huser argues that Mt. Hawley has a duty to defend Huser against EHP's claims in the Underlying Action. Mt. Hawley disagrees, arguing that the claims in the Underlying Action are excluded from coverage by the Mt. Hawley Policies' Breach of Contract Exclusion.

### 1.  The Breach of Contract Exclusion

Mt. Hawley essentially admits that coverage exists based on the terms of the Mt. Hawley Policies and EHP's Petition.[26] Mt. Hawley therefore has the burden of proving that one or more policy exclusions apply.

The Breach of Contract Exclusion is included as an endorsement in each of the Mt. Hawley Policies. In relevant part, the Breach of Contract Exclusion provides that any claim or "suit" for "property damage" "arising directly or indirectly out of" breaches of contract and/or warranty are not covered by the Mt. Hawley Policies. The parties do not contest that the Underlying Action is a "suit" for "property damage." The parties dispute (1) whether the property damage that is the subject of the Underlying Action "ar[ose] directly or indirectly" out of a breach of the contract

---

[26]See Mt. Hawley's Motion, Docket Entry No. 8, p. 15.

between Huser and EHP and (2) whether the Mt. Hawley Policies' separate "Your Work" Exclusion, and its subcontractor exception, preserve coverage because the property damage in the Underlying Action was caused by a subcontractor.

CGL policies grant the insured broad coverage for property damage or bodily injury liability, which is then narrowed by exclusions that "restrict and shape the coverage otherwise afforded." <u>Lamar Homes, Inc. v. Mid-Continent Casualty Co.</u>, 242 S.W.3d 1, 10 (Tex. 2007) (internal quotations omitted). "Exclusions exist for intended or expected losses, as well as for contractually-assumed liabilities, obligations under worker's compensation and related laws . . . and for a number of so-called business risks." <u>Id.</u>

The Fifth Circuit has held that under Texas law "when an exclusion prevents coverage for injuries 'arising out of' particular conduct, '[a] claim need only bear an incidental relationship to the described conduct for the exclusion to apply.'" <u>Sport Supply Group, Inc. v. Columbia Casualty Co.</u>, 335 F.3d 453, 458 (5th Cir. 2003) (alteration in original) (quoting <u>Scottsdale Insurance Co. v. Texas Security Concepts & Investigation</u>, 173 F.3d 941, 943 (5th Cir. 1999)). The Texas Supreme Court has interpreted this language "to mean that there is but for causation, though not necessarily direct or proximate causation." <u>Utica National Insurance Co. of Texas v. American Indemnity Co.</u>, 141 S.W.3d 198, 203 (Tex. 2004). Exclusions containing "arising out of" language are "given a broad, general,

and comprehensive interpretation." <u>Scottsdale Insurance Co.</u>, 173

F.3d at 943. In addition, "'[a]rising out of' are words of much

broader significance than 'caused by.' They are ordinarily

understood to mean 'originating from[,]' 'having its origin in,'

'growing out of[,]' or 'flowing from,' or in short, 'incident to, or

having connection with'. . . ." <u>EMCASCO Insurance Co. v. American</u>

<u>International Specialty Lines Insurance Co.</u>, 438 F.3d 519, 524-25

(5th Cir. 2006).

In the Underlying Action EHP sued both Schaffer and Huser

alleging they were at fault for construction defects in the EHP

Project. EHP's Petition clearly states separate claims against

Huser and Schaffer: EHP's Petition contains a section labeled

"Huser's Breach of Contract and Negligence" and another, separate

section labeled "Schaffer's Breach of Contract, Negligence,

Violations of the DTPA and Fraudulent Misrepresentations."[27] The

Underlying Action alleges that "HUSER has <u>breached its contract</u> or,

in the alternative, has negligently supervised and staffed the

project in question all proximately causing damages or producing

damages which have far exceeded the minimum jurisdictional limits of

this Court."[28] Huser's contract with EHP imposed upon Huser a duty

to supervise and staff the EHP Project with adequate subcontractors.

EHP alleges that Huser's failure to hire and supervise qualified

---

[27]<u>See</u> EHP's Petition, Exhibit 1 to Mt. Hawley's Complaint,
Docket Entry No. 1-1, pp. 4-6.

[28]<u>See</u> <u>id.</u> at 5 (emphasis added).

-16-

contractors directly resulted in the "property damage" claimed in the Underlying Action. In other words, EHP alleges that Huser was a "but for" cause of the property damage claimed. The facts and allegations in the Underlying Action therefore make clear that the "property damage" at issue "ar[ose] directly or indirectly" from Huser's alleged breach of its contract with EHP.

The Breach of Contract Exclusion does not, as Huser contends, render coverage under the Mt. Hawley Policies illusory.[29] The Breach of Contract Exclusion does not reach every claim against an insured whose work is contractual in nature -- the exclusion requires a <u>breach</u> of contract, not merely the <u>existence</u> of a contract. <u>See Scottsdale Insurance Co. v. Mt. Hawley Insurance Co.</u>, Civil Action No. M-10-58, 2011 WL 9169946, at *9 (S.D. Tex. June 15, 2011), <u>affirmed</u>, 488 F. App'x 859 (5th Cir. 2012) ("Although these allegations might be incidentally related to the *existence* of a contract, they do not necessarily bear an incidental relationship to a *breach* of that contract or the failure to carry out contracted-for services in a good and workmanlike manner."). EHP's claims are at least incidentally related to Huser's <u>breach</u> of their contract, not merely the <u>existence</u> of their contract.

While Schaffer and other subcontractors on the EHP Project may be partially responsible for the property damage claimed in the Underlying Action, the Breach of Contract Exclusion still negates

_____

[29]<u>See</u> Huser's Response and Cross Motion, Docket Entry No. 9, p. 25.

Mt. Hawley's duty to defend. There is no evidence to suggest, as Huser argues, that the subcontractor exception contained within the "Your Work" Exclusion preserves coverage. The "Your Work" Exclusion provides that the Mt. Hawley Policies do not apply to "property damage" caused by "your work" (i.e., Huser's work) unless that work was performed by a subcontractor, in which case coverage under the exclusion is preserved. Huser cites <u>Lamar Homes</u> in support of its argument that the "Your Work" Exclusion explicitly preserves coverage for property damage caused by subcontractors. <u>Lamar Homes</u> cited the "Your Work" Exclusion, and the subcontractor exception contained within it, as an example of the types of exclusions used in CGL policies. <u>Lamar Homes</u>, 242 S.W.3d at 11. Nothing in <u>Lamar Homes</u> prevents an insurer from adding an additional exclusion eliminating coverage for property damage arising out of a breach of contract. <u>Lamar Homes</u> held the opposite -- the court discussed the many types of exclusions insurers can utilize, including those that exclude the insured's "contractually-assumed liabilities." <u>Id.</u> at 10. The subcontractor exception contained within the "Your Work" Exclusion expressly modifies only the "Your Work" Exclusion, not the other exclusions contained in the Mt. Hawley Policies.[30] Just because the "Your Work" Exclusion

_____

[30]<u>See, e.g.</u>, Commercial General Liability Policy No. MGL0174186, Exhibit 2 to Mt. Hawley's Complaint, Docket Entry No. 1-2, p. 8. The subcontractor exception states: "<u>This exclusion</u> does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor" (emphasis added).

preserves coverage for damage caused by subcontractors does not mean that other policy exclusions must do the same.

Further, "[i]t is well-settled that to the extent that an endorsement conflicts with other policy language, the endorsement controls." Scottsdale, 2011 WL 9169946, at *9 (citing Mid-Continent Casualty Co. v. Bay Rock Operating Co., 614 F.3d 105, 115 (5th Cir. 2010)). The Breach of Contract Exclusion is an endorsement that explicitly states: "THIS ENDORSEMENT CHANGES THE POLICY."[31] The purpose of the Breach of Contract Exclusion is clear: to limit the coverage afforded by the Mt. Hawley Policies. The Breach of Contract Exclusion therefore limits the terms of the "Your Work" Exclusion's subcontractor exception when "property damage" "aris[es] directly or indirectly out of" a breach of contract. The language of the Breach of Contract Exception is unambiguous. Huser's interpretation fails to overcome the plain language of the Breach of Contract Exclusion. The court will therefore apply the Breach of Contract Exclusion according to its plain language. EHP's claims against Huser in the Underlying Action are therefore excluded from coverage by the Breach of Contract Exclusion. Mt. Hawley does not have a duty to defend Huser in the Underlying Action.[32]

---

[31]See, e.g., id.

[32]Because Mt. Hawley does not have a duty to defend Huser in the Underlying Action, Mt. Hawley has not breached its contracts with Huser by refusing to defend Huser in the Underlying Action. Huser's claim for breach of contract therefore fails as a matter of law.

## 2.  Mt. Hawley's Duty to Indemnify

A court may decide whether an insurer has a duty to indemnify an insured before a judgment in the underlying case when the same facts that negate the insurer's duty to defend also negate the insurer's duty to indemnify.  As discussed above, Huser's liability to EHP for the claims asserted in the Underlying Action "ari[ses] directly or indirectly out of" Huser's alleged breach of its contract with EHP.  Huser's claims are therefore excluded from coverage.  Because all of the claims in the Underlying Action are not covered by the Mt. Hawley Policies, Mt. Hawley also has no duty to indemnify Huser.

## 3.  Huser's Counterclaims Against Mt. Hawley

Huser filed counterclaims against Mt. Hawley alleging violations of the Texas Insurance Code.  Specifically, Huser alleges that Mt. Hawley engaged in Unfair Settlement Practices, Tex. Ins. Code § 541.060, Misrepresentation of an Insurance Policy, Tex. Ins. Code § 541.061, and violated the Prompt Payment of Claims Act, Tex. Ins. Code § 542.058.  Huser alleges that Mt. Hawley violated § 541.060 by "refusing to pay a claim without conducting a reasonable investigation. . . ."[33]  Huser alleges that Mt. Hawley violated § 541.061 by making false or misleading statements regarding coverage under the Mt. Hawley Policies.  Huser alleges

---

[33]See Huser's Answer, Docket Entry No. 6, p. 7 ¶ 21.

that as a result of these violations, "Huser has suffered and will continue to suffer actual damages."[34]

To recover under § 541.060, the insured must prove that the insurer acted in bad faith. See Higginbotham v. State Farm Mutual Automobile Insurance Co., 103 F.3d 456, 460 (5th Cir. 1997) ("Texas courts have clearly ruled that these extra-contractual tort claims [under the DTPA and Insurance Code] require the same predicate for recovery as bad faith causes of action in Texas."). "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." Republic Insurance Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995). For an insured to recover on a bad-faith-based insurance claim when the insurer has properly denied coverage for a claim that is not covered by the policy, the insured must demonstrate that the insurer has committed an injury independent of the policy claim. Id.

The injuries alleged by Huser are based on Mt. Hawley's allegedly improper refusal to defend Huser in the Underlying Action. As explained above, Mt. Hawley does not have a duty to defend Huser in the Underlying Action. Therefore, to recover on its Texas Insurance Code claims requiring a finding of bad faith, Huser must point to extreme actions by Mt. Hawley causing Huser to suffer an injury independent of Mt. Hawley's refusal to defend

---

[34]See id. ¶ 23.

Huser. Huser has failed to do so. Because Mt. Hawley does not have a duty to defend Huser in the Underlying Action and Huser has failed to allege that Mt. Hawley caused it to suffer an independent injury, Huser's Unfair Settlement Practices claim fails.

Section 541.061 provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by . . . making an untrue statement of material fact" regarding the coverage available under a policy. Tex. Ins. Code § 541.061. Section 541.061 also provides other types of false or misleading communications by an insurer that can constitute an unfair or deceptive practice under the statute. See id. Huser fails to allege specific facts to support that Mt. Hawley made any of the false statements contemplated by § 541.061. Because Mt. Hawley had no duty to defend Huser, any statements made to that effect would not constitute misrepresentations. Huser's Misrepresentation of an Insurance Policy claim therefore fails.

"To prevail under the [Texas] Prompt Payment of Claims Act, the plaintiff must establish that there is a claim under the insurance policy for which the insurer is liable. If the policy does not provide coverage for the claims in the underlying lawsuits, the insurer is not liable under the statute." PPI Technology Services, L.P. v. Liberty Mutual Insurance Co., 515 F. App'x 310, 314-15 (5th Cir. 2013) (citing Progressive County Mutual Insurance Co. v. Boyd, 177 S.W.3d 919, 922 (Tex. 2005)).

Because Mt. Hawley has no duty to defend Huser in the Underlying Action, Mt. Hawley cannot be held liable under the Prompt Payment of Claims Act.

## IV. Conclusion

For the reasons explained above, the court finds that Mt. Hawley has no duty to defend or indemnify Huser for the claims asserted in the Underlying Action. Huser's breach of contract and insurance law counterclaims predicated on Mt. Hawley's failure to defend Huser therefore also fail. Accordingly, Plaintiff Mt. Hawley Insurance Company's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**, and Defendant's Cross Motion on the Duty to Defend (Docket Entry No. 9) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 19th day of March, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE